Brian R. Michalek (SBN 302007)
Casey T. Grabenstein (*pro hac vice* – to be filed)
Joseph M. Kuo (*pro hac vice* – to be filed)
**SAUL EWING LLP**
161 N. Clark St., Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7100
Facsimile: (312) 876-0288
brian.michalek@saul.com
casey.grabenstein@saul.com
joseph.kuo@saul.com

Andrew Schwerin (*pro hac vice* – to be filed)
**SAUL EWING LLP**
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102 2186
Telephone: (215) 972-7184
Facsimile: (215) 972-7184
andrew.schwerin@saul.com

Michael E. Flynn-O'Brien (SBN 291301)
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7245
Facsimile: (415) 426-4744
mflynnobrien@bdiplaw.com

*Attorneys for Plaintiff InfoExpress Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **INFOEXPRESS INC.** | |
| Plaintiff, | Case No.  4:23-cv-4389 |
| v. | **COMPLAINT FOR PATENT INFRINGEMENT** |
| **FORTINET, INC.,** | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Plaintiff InfoExpress Inc. ("InfoExpress" or "Plaintiff"), by its undersigned counsel, for its Complaint against Defendant Fortinet, Inc. ("Fortinet" or "Defendant"), states as follows:

I.   **NATURE OF THE ACTION**

1.   This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271, based on Defendant's unauthorized and willfully infringing manufacture, use, sale, offering for sale, and/or importation of products and the practicing of methods incorporating InfoExpress's patented inventions.

2.   InfoExpress is owner of all right, title, and interest in and to multiple United States patents including United States Patent Nos. 7,523,484 (the '484 Patent); 8,051,460 (the '460 Patent); 8,677,450 (the '450 Patent); 8,578,444 (the '444 Patent); 8,347,350 (the '350 Patent); and 8,117,645 (the '645 Patent) (collectively, "the Patents-in-Suit").

3.   Defendant manufactures, makes, uses, provides, sells, offers for sale, imports, and/or distributes products, services, and systems which directly infringe the Patents-in-Suit. The Patents-in-Suit represent InfoExpress's significant investment into the network access and security space.

II.   **THE PARTIES**

4.   Plaintiff InfoExpress is a California corporation with its principal place of business located at 2975 Bowers Ave #323, Santa Clara, CA 95051.

5.   Defendant is a corporation that is organized under the laws of Delaware and that has place of business located at 899 Kifer Road, Sunnyvale, California 94086.

III.   **JURISDICTION AND VENUE**

6.   This is an action for patent infringement, which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 282, 284, and 285.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

COMPLAINT FOR PATENT INFRINGEMENT

41941557.6

7.     The Court has personal jurisdiction over Defendant because it is headquartered within this judicial district and further because it has committed acts giving rise to this action within California and within this District.  Defendant also regularly does business or solicits business in this District and in California, engages in other persistent course of conduct and derives substantial revenue from products and/or services provided in this District and in California, and has purposefully established substantial, systematic and continuous contacts with this District and should reasonably expect to be sued in a court in this District.

8.     Defendant has committed acts of patent infringement in this District and elsewhere in California.

9.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because Defendant has an established place of business in this District, including at 899 Kifer Road, Sunnyvale, California 94086, has committed acts within this District giving rise to this action and resulting in the derivation of substantial revenue from goods and services provided to customers in California, and continues to conduct business in this District, including one or more acts of selling, using, importing, and/or offering for sale infringing goods and/or performing support service to Defendant customers in this District.

## IV.     INTRADISTRICT ASSIGNMENT

10.     Pursuant to Local Rule 3-2(c) and the Court's Assignment Plan (General Order No. 44) D(3), intellectual property cases, such as this one, are assigned on a district-wide basis.

## V.     FACTUAL ALLEGATIONS

### *InfoExpress's Innovations*

11.     Established in 1993, InfoExpress is a privately held network security solutions corporation with its offices in Santa Clara, California.

12.     Since its inception, and leading up to its groundbreaking patented network access control ("NAC") and endpoint compliance innovations, InfoExpress has been a pioneer in designing and implementing foundational security technologies.

13.     InfoExpress's security innovation dates as early as the 1990s when it developed Virtual Transmission Control Protocol ("VTCP"), a virtual application programming interface ("API") that allowed online dial-up accounts to run internet applications directly on user personal computers.

14.     VTCP was used by InfoExpress's corporate customers to provide remote employee access to corporate networks.  This, however, required additional security.

15.     In response, InfoExpress developed and introduced VTCP Secure in 1996.  VTCP Secure was a seminal approach to remote access Virtual Private Networks ("VPN").  Like its predecessor, VTCP Secure was also tremendously popular and sales jumped exponentially.  It also garnered substantial industry praise.[1]

16.     As culture evolved, additional security measures were needed to protect corporate resources from potentially compromised remote VPN-connected PCs.  Thus, in or around 2000, InfoExpress developed CyberArmor—a personal firewall that provided protection to the PCs.  Again, InfoExpress received praise and awards in the security industry for CyberArmor.

17.     While CyberArmor was successful, InfoExpress customers reported that some individual users did not install CyberArmor or disabled it.  To address this issue, InfoExpress innovated to develop a CyberGatekeeper Remote product and service which could be placed

---

[1] HelpNetSecurity, *Infoexpress VPN Software VTCP/Secure Chosen Windows & .Net Magazine Readers' Choice Award Winner*, https://www.helpnetsecurity.com/2002/09/18/infoexpress-vpn-software-vtcpsecure-chosen-windows-net-magazine-readers-choice-award-winner/ (last visited May 18, 2023) ("VTCP/Secure 5.1 was selected a winner in the Best VPN category of the Windows & .NET Magazine Readers' Choice Awards.")

COMPLAINT FOR PATENT INFRINGEMENT

4

41941557.6

between VPN servers and its corporate customer networks to monitor whether the CyberArmor personal firewall was installed and active on the remote PC before granting access to the corporate network.

18.     A shift in the security space came when companies started transitioning employees from desktops to mobile devices such as laptops.  While this expanded mobile network connectivity and usage, it also increased corporate security risks.  Because CyberGatekeeper Remote was located behind VPN servers and because a corporate organization provided access to the network with hundreds, if not, thousands of switches, adding extra CyberGatekeeper Remote behind each switch was impractical.

19.     Accordingly, in 2003, InfoExpress invented network access control through insertion of a gatekeeper between access devices and the authentication servers via a new NAC product.  This product, called CyberGatekeeper LAN, was the world's first network access control product for the local area networks ("LAN").

20.     To date, InfoExpress continues to offer products and services in the network security space. However, Defendant's infringement and usurping of InfoExpress's patented technology have resulted in a loss of market share, loss of customers, and declining sales.

### *InfoExpress's Patent Portfolio*

21.     The InfoExpress patent portfolio includes several issued and enforceable United States patents ("the Patent Portfolio") directed to network security and access control. This Patent Portfolio is a direct result from the innovation, ingenuity, and work of InfoExpress personnel including Chief Executive Officer and inventor Stacey Lum.

22.     The Patents-in-Suit are part of the Patent Portfolio and relate to specific core and foundational inventions for, and associated with, NAC technology.

COMPLAINT FOR PATENT INFRINGEMENT

41941557.6

23.     The Patent Portfolio, and the Patents-in-Suit solve technological problems that existed relating to the capabilities of controlling access to computing networks in the face of growing user demand for accessing secure networks over the Internet and from personal devices such as laptop computers and other mobile devices.

24.     On April 21, 2009, the '484 Patent entitled "Systems and Methods for Controlling Network Access" was duly and legally issued by the United States Patent and Trademark Office. A true and accurate copy of the '484 Patent is attached hereto as Exhibit A.

25.     On November 1, 2011, the '460 Patent entitled "Systems and Methods for Controlling Network Access" was duly and legally issued by the United States Patent and Trademark Office. A true and accurate copy of the '460 Patent is attached hereto as Exhibit B.

26.     On March 18, 2014, the '450 Patent entitled "Systems and Methods for Controlling Network Access" was duly and legally issued by the United States Patent and Trademark Office. A true and accurate copy of the '450 Patent is attached hereto as Exhibit C.

27.     On November 5, 2013, the '444 Patent entitled "Systems and Methods of Controlling Network Access" was duly and legally issued by the United States Patent and Trademark Office. A true and accurate copy of the '444 Patent is attached hereto as Exhibit D.

28.     On January 1, 2013, the '350 Patent entitled "Systems and Methods of Controlling Network Access" was duly and legally issued by the United States Patent and Trademark Office. A true and accurate copy of the '350 Patent is attached hereto as Exhibit E.

29.     On February 14, 2012, the '645 Patent entitled "Systems and Methods of Controlling Network Access" was duly and legally issued by the United States Patent and Trademark Office. A true and accurate copy of the '645 Patent is attached hereto as Exhibit F.

30.     The Patents-in-Suit are valid and enforceable.

31.     At least as of the 2003 priority date, the inventions as claimed in the Patents-in-Suit were novel, non-obvious, unconventional, and non-routine.

32.     InfoExpress is the assignee of and owns all right, title, and interests in the Patents-in-Suit, including the right to receive lost profits and/or a reasonable royalty, and recovery of any and all other damages for all past and future infringement thereof.

33.     To the extent 35 U.S.C. § 287 is applicable, the requirements have been satisfied with respect to the Patents-in-Suit.

### *Defendant's Infringing Instrumentalities*

34.     Defendant has been making, using, selling, importing, and offering for sale hardware (including virtual) and software (including licenses) that implement or practice the Patents-in-Suit including those for and relating to its NAC products such as its Zero Trust Network Access Solutions including FortiNAC alone, and in combination with, Defendant's products such as:

- Defendant's wireless access points, including its FortiAPs;

- Defendant's FortiNAC compliant hardware and virtual servers; and

- Defendant's routers and switches, including its FortiSwitch, which implements FortiNAC.

(hereinafter, the "Accused Instrumentalities.").



COMPLAINT FOR PATENT INFRINGEMENT

7

41941557.6

35.     Defendant's FortiNAC is a network access control solution that enables organizations to easily manage their network access policies and ensure compliance with security policies. It offers a comprehensive view of all devices and users on the network, allowing for granular control of access based on user roles, device, types, and network locations.

36.     Defendant's FortiNAC "is an 'out of band' solution, meaning it does not sit in-line of user traffic. This architecture allows FortiNAC to be deployed centrally and manage many remote locations." https://www.fortinet.com/content/dam/fortinet/assets/data-sheets/fortinac.pdf

37.     Defendant also infringes the claims of the Patents-in-Suit by making and selling its FortiNAC solution in combination or for use with other third party products including servers, routers, switches, and/or access points.  For example, the "solution provides automated onboarding of new endpoints, as well as continuous monitoring and remediation of non-compliance devices. FortiNAC also integrates with third-party security solutions and offers advanced reporting and analytics capabilities for enhanced visibility and compliance reporting." *Id.*

38.     Defendant itself practices the claimed inventions in the Patents-in-Suit, for example at its locations and campuses in this District and throughout the United States.

39.     Defendant is also aware of InfoExpress and its Patent Portfolio.

40.     On information and belief, Defendant is relying on InfoExpress's patented CyberGatekeeper product as prior art in *In re: Taasera Licensing LLC, Patent Litigation*, Civil Action No. 2:22-MD-03042-JRG (E.D. Tex.).

41.     Further, Defendant's own U.S. patents disclose and cite InfoExpress's Patent Portfolio.

COMPLAINT FOR PATENT INFRINGEMENT

41941557.6

42.   Defendant owns U.S. Patent No. 9,948,607 (App. No. 15/452,436).  On March 17 2017, during prosecution of the application, Defendant submitted an information disclosure statement to the examiner, which identified InfoExpress's '645 Patent as relevant to the United States Patent and Trademark Office.

43.   Similarly, Defendant owns U.S. Patent No. US 9,887,901 (App. No. 15/465,577). On April 3, 2017, during prosecution of the application, submitted an information disclosure statement to the examiner, which identified InfoExpress's '645 Patent as relevant to the United States Patent and Trademark Office.

44.   Defendant also owns U.S. Patent Nos. 8,931,047; 8,931,046; and 9,609,021 which cite to InfoExpress's '645 Patent.

45.   Thus, at least as early as March 2017, Defendant was aware of InfoExpress's '645 Patent.  On information and belief, Defendant would have analyzed the '645 Patent and the InfoExpress Patent Portfolio, and thus would have been aware of how its own products met the claims of the '645 Patent and the other Patents-in-Suit.

46.   Accordingly, Defendant knew of the InfoExpress Patent Portfolio (including the Patents-In-Suit) and had knowledge of its infringement, or at least was willfully blind to its infringement.

47.   Defendant has also been aware that it infringes the Patents-in-Suit since at least as of the date of filing and/or service this Complaint.  Since obtaining knowledge of its infringing activities, Defendant has failed to cease its infringing activities.

48.   Defendant has infringed, and continues to infringe, claims of the Patents-In-Suit in the United States by making, using, offering for sale, selling and/or importing the Accused Instrumentalities in violation of 35 U.S.C. § 271(a).

49.     Defendant induces infringement by others of one or more claims of the Patents-in-Suit in violation of 35 U.S.C. § 271(b) in aiding, instructing, promoting, encouraging or otherwise acting with the intent to cause other parties, including customers, to use its Accused Instrumentalities.  Defendant is aware of the Patents-in-Suit, at least as of the filing and/or service of this lawsuit, and knows or should have known that the inducing acts described herein constitutes infringement of the Patents-in-Suit.

50.     Defendant takes specific steps to actively induce other third parties—for example, customers—to use and/or configure the Accused Instrumentalities in a manner and intentionally instructs infringing use at least by providing:

(1) **Brochures and installation and user guides**, such as its *FortiNAC 9.4.0 Administration Guide* and its *FortiOS 7.0.0 New Features Guide*, which as discussed above, instruct Defendant's customers to respectively use FortiNAC and FortiOS in infringing manner, as shown below by way of example.  The purpose of the *FortiNAC 9.4.0 Administration Guide*, the *FortiOS 7.0.0 New Features Guide*, and other literature is to instruct Defendant's customers how to use its products in an infringing manner:

## Port changes

When the port's VLAN changes or when a port-based CLI configuration is applied, entries are written to the Port Changes view.

### Settings

Fields used in filters are also defined in this table.

| Field | Definition |
|---|---|
| **Port changes** | |
| Date | Date that the change occurred. |
| CLI Config Name | CLI configuration used to modify the port state. |
| Port Change Reason | Reasons for changes in port state. Reasons include:<br>• **Registration**: Port was moved into the registration VLAN.<br>• **Remediation**: Port was moved into the remediation VLAN.<br>• **Dead End**: Port was moved into the dead end VLAN.<br>• **Default**: Port was moved to the default VLAN<br>• **Role**: Port was moved into the VLAN specified by the role associated with the end-station and the port.<br>• **Authentication**: Port was moved into the authentication VLAN.<br>• **Undo**: Port was changed based on Undo commands in a CLI configuration. |
| Role/Access Policy | Name of the Network Device Role or the network access policy that triggered the port change. Not all port changes are associated with a role or a policy. |
| Port | Port that was changed. Includes device name and port number. |
| VLAN | ID or Name of the VLAN where the port was moved. |
| Device | Filters results by the device where the affected ports reside. Use **Sort By** to resort devices in the drop-down list by name or by IP address. |

*FortiNAC 9.4.0 Admin Guide* at 400; *see also id.* at 427 ("Determine which hosts or users will receive which network access. . . . Create your network access policies by mapping a user/host profile to a network access configuration."); *and* 315 (describing different VLANs, including registration (which "[i]solates unregistered hosts from the production network during host registration") and authentication (which "[i]solates registered hosts from the Production network during user authentication"), and states that "If enabled, FortiNAC uses Firewall Rules to treat authenticated and unauthenticated users differently.").



*FortiOS 7.0.0 New Features Guide* at 353;

(2) **Webinars, training videos and demonstrations for FortiNAC**, for example,

Redington Value Distribution, *Redington & Fortinet Webinar Session Fortinet FortiNAC*, https://www.youtube.com/watch?v=kl8ayOgRqD8, which (as specifically shown at 13:28 in the still image below), instructs third-party users to use the accused FortiNAC instrumentality. The purpose of this video and others is to instruct Defendant's customers how to use FortiNAC in an infringing manner:



1

2 (3) **Webinars, training videos and demonstrations for FortiOS**, for example, Fortinet,

3 *Support NAC Policies on SwitchPorts in FortiOS 6.4*,

4 https://www.youtube.com/watch?v=3TT2ZttiT_o, which instruct third-party users to use

5 the accused FortiOS  instrumentality, (a) as specifically stated at 0:25–0:30 ("When the

6 [endpoint] device matches the patterns defined in the NAC policy, connection is applied

7 to the device, such as moving it to a specific VLAN, or having a security policy

8 applied."), (b) as shown (at 1:50 in the still image below) by using an "onboarding

9 VLAN" for applying NAC policies, and (c) as shown (at 4:28 in the still image below) by

10 assigning certain users (e.g. those on the "accounting team") to a specific VLAN (the

11 accounting VLAN)),.

12



13

14

15

16

17

18

19

20

21

22

23

24

COMPLAINT FOR PATENT INFRINGEMENT

41941557.6



(4) **Software updates to its FortiNAC through Fortinet**, *FortiNAC - Upgrade*

*Instructions and Considerations Version 9.x* (March 28, 2022),

https://fortinetweb.s3.amazonaws.com/docs.fortinet.com/v2/attachments/152e0729-7782-

11eb-9995-00505692583a/UpgradeInstructandConsider-pdf.pdf ("This document

provides the steps to upgrade the FortiNAC appliance software.") and to its FortiOS

through at least its website at FortiGuard Labs, Product Security Incident Response Team

(PSIRT) Advisories, https://www.fortiguard.com/psirt?product=FortiOS (last visited June

14, 2023), whereby third party users are instructed to download updates to FortiOS,

which can be in response to security vulnerabilities:

**Monthly PSIRT Advisories**
- 2023: Jun , May , Apr , Mar , Feb , Jan
- 2022: Dec , Nov , Sep , Aug , Jul , Jun , May , Apr , Mar , Feb
- 2021: Dec , Nov , Oct , Sep , Aug , Jul , Jun , May , Apr , Mar , Feb , Jan
- 2020: Dec

The following is a list of advisories for issues resolved in Fortinet products. The resolution of such issues is coordinated by the Fortinet Product Security Incident Response Team (PSIRT), a dedicated, global team that manages the receipt, investigation, and public reporting of information about security vulnerabilities and issues related to Fortinet products and services.
For details of how to raise a PSIRT Issue with Fortinet, please see our PSIRT Policy here.

**FortiOS & FortiProxy - Access of uninitialized pointer in administrative interface API**
An access of uninitialized pointer vulnerability [CWE-824] in FortiOS administrative interface API may allow an authentica...

FortiProxy 7.2.3, 7.2.2, 7.2.1, 7.2.0, 7.0.9, 7.0.8, 7.0.7, 7.0.6, 7.0.5, 7.0.4, 7.0.3, 7.0.2, 7.0.1, 7.0.0, 2.0.9, 2.0.8, 2.0.7, 2.0.6, 2.0.5, 2.0.4, 2.0.3, 2.0.2, 2.0.12, 2.0.11, 2.0.10, 2.0.1, 2.0.0, 1.2.9, 1.2.8, 1.2.7, 1.2.6, 1.2.5, 1.2.4, 1.2.3, 1.2.2, 1.2.13, 1.2.12, 1.2.11, 1.2.10, 1.2.1, 1.2.0, 1.1.6, 1.1.5, 1.1.4, 1.1.3, 1.1.2, 1.1.1, 1.1.0   FortiOS 7.2.4, 7.2.3, 7.2.2, 7.2.1, 7.2.0, 7.0.9, 7.0.8, 7.0.7, 7.0.6, 7.0.5, 7.0.4, 7.0.3, 7.0.2, 7.0.11, 7.0.10, 7.0.1, 7.0.0, 6.4.9, 6.4.8, 6.4.7, 6.4.6, 6.4.5, 6.4.4, 6.4.3, 6.4.2, 6.4.13, 6.4.12, 6.4.11, 6.4.10, 6.4.1, 6.4.0, 6.2.9, 6.2.8, 6.2.7, 6.2.6, 6.2.5, 6.2.15, 6.2.14, 6.2.13, 6.2.12, 6.2.11, 6.2.10, 6.2.1, 6.2.0, 6.0.9, 6.0.8, 6.0.7, 6.0.6, 6.0.5, 6.0.4, 6.0.3, 6.0.2, 6.0.17, 6.0.16, 6.0.15, 6.0.14, 6.0.13, 6.0.12, 6.0.11, 6.0.10, 6.0.1, 6.0.0

Jun 12, 2023   Severity ●●●○○ Medium   IR Number: FG-IR-23-095   CVE-2023-29178

(5) **Product support through its FortiCare Technical Support and Services**, whereby Defendant's customers can obtain technical support for their Fortinet products at three different tiers of service—essential, premium and elite, as shown below:

**FortiCare Service Offerings**

| FortiCare Included Features | Per-device Service Options | | |
|---|---|---|---|
| | FortiCare ESSENTIAL | FortiCare PREMIUM | FortiCare ELITE |
| RMA | Return and replace only | Advanced replacement (PRMA available) | Advanced replacement (PRMA available) |
| Web Support | ✓ | ✓ | ✓ |
| Telephone Support | — | ✓ | ✓ |
| Firmware Updates | ✓ | ✓ | ✓ |
| Asset Management Portal | ✓ | ✓ | ✓ |
| Response Time (Critical Issue) | Next business day | 1 hour | 15 mins |
| Response Time (Non-critical Issue) | Next business day | Next business day | 2 business hours |
| Extended End-of-Engineering-Support (E-EoES) for Long Term Supported Firmware (LTS) of 18 months* | — | — | ✓ |
| Device Insights and Monitoring Portal (FortiCare Elite Portal) | — | — | ✓ |

\* Currently available for FortiGate only

FortiCare Services are provided by the support teams located across 20 regional Technical Assistance Centers (TACs) and three regional Centers of Excellence (COE).

COMPLAINT FOR PATENT INFRINGEMENT

15

41941557.6

1    Fortinet, FortiCare Services:  Technical Support, Advanced Support, and Professional

2    Services, at 3 (April 12, 2023), https://www.fortinet.com/content/dam/fortinet/

3    assets/solution-guides/sb-forticare-services.pdf (last visited June 14, 2023); and

4    (6) **An online community for support, hosted at https://community.fortinet.com/**,

5    whereby users and Defendant's personnel can post technical help about FortiNAC and

6    FortiOS, such as in the examples below:



17   Fortinet, *Technical Tip: How to Administratively Access FortiNAC using External*

18   *RADIUS server* (Oct 14, 2022), https://community.fortinet.com/t5/FortiNAC/Technical-

19   Tip-How-to-Administratively-Access-FortiNAC-using/ta-p/226728 (last visited June 14,

20   2023).

Fortinet, *Technical Tip: Configuring session TTL timers for particular ports or services* (Dec. 6, 2022), https://community.fortinet.com/t5/FortiGate/Technical-Tip-Configuring-session-TTL-timers-for-particular/ta-p/194732 (last visited June 14, 2023).

51.     Defendant's activities cause users to use and infringe the systems and methods claimed in the Patents-in-Suit.

52.     Defendant has also contributed to the infringement of one or more claims of the Patents-in-Suit, and continues to do so, by offering to commercially distribute, commercially distributing, or importing software and devices that constitute components of InfoExpress's patented devices, and/or are configured to practice InfoExpress's claimed methods.

53.     For example, Defendant is liable for contributory infringement by making, using, selling, and offering to sell its servers, FortiNAC hardware and software, and instructing users to infringe the claims of the Patents-in-Suit.

54.     FortiNAC servers—including (at least) the FortiNAC-CA-500C, FortiNAC-CA-600C, and FortiNAC-CA-700C (collectively, "FortiNAC Servers")—are material parts of

InfoExpress's claimed devices and systems, and are configured to practice InfoExpress's claimed methods of NAC.

55.     These FortiNAC Servers are "can be deployed in a variety of sizes, depending on the number of ports they need to support. FortiNAC is ideal for support distributed architectures, including SD-Branch locations."  These Servers are not a staple article or commodity of commerce suitable for substantial noninfringing use.



### Hardware Server Sizing

Appliance

| Hardware Server | Type | Target Environment | Capacity[1] |
|---|---|---|---|
| FortiNAC-CA-500C | Standalone Appliance (Integrated Control Server and Application Server) | Small Environments | Manages up to 2000 ports in the network |
| FortiNAC-CA-600C | High Performance Control and Application Server | Medium Environments | Manages up to 15 000 ports in the network |
| FortiNAC-CA-700C | Ultra High Performance Control and Application Server | Large Environments with few Persistent Agents | Manages up to 25 000 ports in the network |
| FortiNAC-M-550C | Management Appliance (Provides centralized management when multiple appliances are deployed) | Multi-site environments with multiple appliances | Unlimited |

1 Ports in the network = total number of switch ports + maximum number of concurrent wireless connections. FortiNAC sizes the appliance capacity based on total port counts not total number of devices.

### VM Server Resource Sizing

Virtual

| VM OS | SKU | Ports in the Network[1] | Target Environment | CPU Reference | vCPU Qty[2] | Memory (GB) | Disk (GB) |
|---|---|---|---|---|---|---|---|
| CentOS | FNC-CA-VM | Up to 2 000 | Small | Intel Xeon E-2124 3.3 GHz 4C/4T | 4 | 16 | 100 |
| | | Up to 15 000 | Medium | Intel Xeon Silver 4210 2.2G 10C/20T | 20 | 32 | 100 |
| | | Up to 25 000 | Large | Intel Xeon Gold 6240 2.6 G 18C/36T | 36 | 96 | 100 |
| | FNC-M-VM | Unlimited | Large | Intel Xeon Silver 4210 2.2G 10C/20T | 20 | 32 | 100 |
| FortiNAC-OS | FNC-CAX-VM | Up to 5 000 | Small | Intel Xeon E-2278 GE 3.3 GHz 8C/16T | 8 | 16 | 100 |
| | | Up to 15 000 | Medium | AMD Milan EPYC 7413 2.65 GHz 24C/48T | 24 | 32 | 100 |
| | | Up to 25 000 | Large | AMD Milan EPYC 7543P 2.8 GHz 32C/64T | 32 | 96 | 100 |
| | FNC-MX-VM | Unlimited | Large | AMD Milan EPYC 7413 2.65 GHz 24C/48T | 24 | 32 | 100 |

1 Ports in the network = total number of switch ports + maximum number of concurrent wireless connections. FortiNAC sizes the appliance capacity based on total ports count, not total number of devices.

2 The values in the vCPU column were determined by using the CPUs in the CPU reference column and are guidelines only. VM resources may vary based on individual environments.

56.     Additionally, Defendant is liable for contributory infringement under 35 U.S.C. § 271(c) because Defendant's software and devices reconfigure the communication port of an access point for communicating data between a user endpoint and protected resources on a protected network, once requirements of the security policy are satisfied.  As such, Defendant's software and devices are especially made or especially adapted for use in an infringement, and are not a staple articles or commodities of commerce suitable for substantial noninfringing use.

57.     Defendant undertook and continues its infringing actions despite that it knew and/or should have known that its actions constituted an unjustifiably high risk that its activities infringed the Patents-in-Suit, which were duly issued by the USPTO, and are presumed valid. Since first prosecuting its patent applications, through litigating the *Taasera Licensing* lawsuit, and at the latest, the filing of this action, Defendant has been aware of the unjustifiably high risk that its actions constituted and continue to constitute infringement of the Patents-in-Suit, and that the Patents-in-Suit are valid.  Defendant could not reasonably, subjectively believe that its actions do not constitute infringement of the Patents-in-Suit, and it could not reasonably, subjectively believe that the Patents-in-Suit are invalid.  Despite this knowledge and subjective belief, and the unjustifiably high risk that its actions constitute infringement, Defendant has continued its infringing activities.  As such, Defendant willfully infringes the Patents-in-Suit.

**COUNT I:  INFRINGEMENT OF THE '484 PATENT**

58.     InfoExpress incorporates all previous paragraphs by reference as if fully stated herein.

59.     InfoExpress owns all substantial rights, interest, and title in and to the '484 Patent, including the sole and exclusive right to prosecute this action and enforce the '484 Patent against infringers, and to collect damages for all relevant times.

60.     The '484 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been conventional or generic in the art at the time of the invention.

61.     As set forth in the attached exemplary non-limiting Claim Chart (Exhibit G), Defendant, without authorization or license from InfoExpress, has been and is presently directly infringing, literally or under the doctrine of equivalents, at least one claim of the '484 Patent,

1  pursuant to 35 U.S.C. § 271(a), including through making, using, selling, offering to sell, and

2  importing, in the United States the Accused Instrumentalities.

3      62.     Defendant actively induces infringement under § 271(b) of at least one claim of

4  the '484 Patent by selling to its customers the Accused Instrumentalities with instructions as to

5  how to use the Accused Instrumentalities as recited in the '484 Patent.  Defendant knowingly

6  aids, instructs, or otherwise acts with the specific intent to cause an end user to use the Accused

7  Instrumentalities.  As set forth above,  Defendant provides to third parties (including its

8  customers) (1) brochures and literature; (2) webinars, training videos and demonstrations for

9  FortiNAC; (3) webinars, training videos and demonstrations for FortiOS; (4) software updates;

10  (5) product support through its FortiCare Technical Support and Services; and (6) an online

11  community for NAC support, all of which instruct those third parties to infringe the '484 patent.

12  Additionally, Defendant knew of the '484 Patent and knew that its use and sale of the Accused

13  Instrumentalities infringe at least one claim of the '484 Patent, and Defendant is thus liable for

14  inducement of the '484 Patent pursuant to 35 U.S.C. § 271(b).

15      63.     Defendant is liable for contributory infringement under § 271(c) of at least one

16  claim of the '484 Patent by providing, and by having knowingly provided the Accused

17  Instrumentalities, including the Servers and the FortiNAC software and devices used to infringe

18  at least one claim of the '484 Patent.  Defendant's FortiNAC software, as sold, contains

19  instructions for performing the claimed methods of the '484 patent.  Similarly, FortiNAC Servers

20  are material parts of InfoExpress's claimed inventions, and are configured to practice

21  InfoExpress's claimed methods of NAC.  For example, Defendant's software and devices

22  reconfigure the communication port of an access point for communicating data between a user

23  endpoint and protected resources on a protected network, once requirements of the security

24  policy are satisfied.  Defendant's *FortiNAC 9.4.0 Administration Guide* describes an example of

COMPLAINT FOR PATENT INFRINGEMENT
41941557.6

this on page 400, where it explains that when an access point's "port changes or when a port-based CLI configuration is applied, entries are written to the Port Changes view."  It further describes, on page 427, how one "[f]irst determine[s] which ports will participate in network access policies and place[s] those ports in the Role Based Access Group[,]" and subsequently "[c]reate[s] your network access policies by mapping a user/host profile to a network access configuration."  *See also id.* at 315 (describing different VLANs, including registration (which "[i]solates unregistered hosts from the production network during host registration") and authentication (which "[i]solates registered hosts from the Production network during user authentication"), and stating"If enabled, FortiNAC **uses Firewall Rules to treat authenticated and unauthenticated users differently**.") (emphasis added).

64.     Defendant has known or should have known that its FortiNAC Servers and FortiNAC software and devices are especially made or especially adapted for use in infringement of the Patents-in-Suit, not staple articles, and not commodities of commerce suitable for substantially noninfringing use.

65.     To the extent 35 U.S.C. § 287 is determined to be applicable, its requirements have been satisfied with respect to the '484 Patent.

66.     InfoExpress has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to InfoExpress in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty and in an amount yet to be determined.  InfoExpress is also entitled to receive such other and further relief, as this Court deems just and proper.

67.     InfoExpress alleges that Defendant's infringement of the '484 Patent has been and continues to be deliberate and willful and egregious, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and

attorney's fees to InfoExpress pursuant to 35 U.S.C. §§ 284-285.  As set forth above, Defendant has had knowledge of the '484 Patent or at least was willfully blind to its infringement, as well as related patents and patent applications, and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for InfoExpress's patent rights.  Thus, Defendant's infringing actions have been and continue to be consciously wrongful.

68.     Defendant's use of the '484 Patent is not licensed or authorized by InfoExpress in any way.

**COUNT II:  INFRINGEMENT OF THE '460 PATENT**

69.     InfoExpress incorporates all previous paragraphs by reference as if fully stated herein.

70.     InfoExpress owns all substantial rights, interest, and title in and to the '460 Patent, including the sole and exclusive right to prosecute this action and enforce the '460 Patent against infringers, and to collect damages for all relevant times.

71.     The '460 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been conventional or generic in the art at the time of the invention.

72.     As set forth in the attached exemplary non-limiting Claim Chart (Exhibit H), Defendant, without authorization or license from InfoExpress, has been and is presently directly infringing, literally or under the doctrine of equivalents, at least one claim of the '460 Patent, pursuant to 35 U.S.C. § 271(a), including through making, using, selling, offering to sell, and importing, in the United States the Accused Instrumentalities.

COMPLAINT FOR PATENT INFRINGEMENT

73.     Defendant actively induces infringement under § 271(b) of at least one claim of the '460 Patent by selling to its customers the Accused Instrumentalities with instructions as to how to use the Accused Instrumentalities as recited in the '460 Patent.  Defendant knowingly aids, instructs, or otherwise acts with the specific intent to cause an end user to use the Accused Instrumentalities.  As set forth above, Defendant provides to third parties (including its customers) (1) brochures and literature; (2) webinars, training videos and demonstrations for FortiNAC; (3) webinars, training videos and demonstrations for FortiOS; (4) software updates; (5) product support through its FortiCare Technical Support and Services; and (6) an online community for NAC support, all of which instruct those third parties to infringe the '460 patent.  Additionally, Defendant knew of the '460 Patent and knew that its use and sale of the Accused Instrumentalities infringe at least one claim of the '460 Patent, and Defendant is thus liable for inducement of the '460 Patent pursuant to 35 U.S.C. § 271(b).

74.     Defendant is liable for contributory infringement under § 271(c) of at least one claim of the '460 Patent by providing, and by having knowingly provided the Accused Instrumentalities, including the FortiNAC Servers and the FortiNAC software and devices used to infringe at least one claim of the '460 Patent.  Defendant's FortiNAC software, as sold, contains instructions for performing the claimed methods of the '460 patent.  Similarly, FortiNAC Servers are material parts of InfoExpress's claimed inventions, and are configured to practice InfoExpress's claimed methods of NAC.  Additionally, Defendant's software and devices reconfigure the communication port of an access point for communicating data between a user endpoint and protected resources on a protected network, once requirements of the security policy are satisfied.  Defendant's *FortiNAC 9.4.0 Administration Guide* describes an example of this on page 400, where it explains that when an access points "port changes or when a port-based CLI configuration is applied, entries are written to the Port Changes view."  It

COMPLAINT FOR PATENT INFRINGEMENT
41941557.6

further describes, on page 427, how one "[f]irst[] determine[s] which ports will participate in network access policies and place[s] those ports in the Role Based Access Group[,]" and subsequently "[c]reate[s] your network access policies by mapping a user/host profile to a network access configuration."  *See also id.* at 315 (describing different VLANs, including registration (which "[i]solates unregistered hosts from the production network during host registration") and authentication (which "[i]solates registered hosts from the Production network during user authentication"), and states that "If enabled, FortiNAC **uses Firewall Rules to treat authenticated and unauthenticated users differently**.") (emphasis added).

75.     Defendant has known or should have known that its FortiNAC Servers and FortiNAC software and devices are especially made or especially adapted for use in infringement of the Patents-in-Suit, not staple articles, and not commodities of commerce suitable for substantially noninfringing use.

76.     To the extent 35 U.S.C. § 287 is determined to be applicable, its requirements have been satisfied with respect to the '460 Patent.

77.     InfoExpress has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to InfoExpress in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty and in an amount yet to be determined.  InfoExpress is also entitled to receive such other and further relief, as this Court deems just and proper.

78.     InfoExpress alleges that Defendant's infringement of the '460 Patent has been and continues to be deliberate and willful and egregious, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to InfoExpress pursuant to 35 U.S.C. §§ 284-285.  As set forth above, Defendant has had knowledge of the '460 Patent or at least was willfully blind to its infringement, as well

1   as related patents and patent applications, and its infringement thereof, and yet has deliberately

2   continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for

3   InfoExpress's patent rights.  Thus, Defendant's infringing actions have been and continue to be

4   consciously wrongful.

5        79.    Defendant's use of the '460 Patent is not licensed or authorized by InfoExpress in

6   any way.

7               **COUNT III:  INFRINGEMENT OF THE '450 PATENT**

8        80.    InfoExpress incorporates all previous paragraphs by reference as if fully stated

9   herein.

10       81.    InfoExpress owns all substantial rights, interest, and title in and to the '450 Patent,

11   including the sole and exclusive right to prosecute this action and enforce the '450 Patent against

12   infringers, and to collect damages for all relevant times.

13       82.    The '450 Patent describes in technical detail each of the limitations of the claims,

14   allowing a skilled artisan to understand the scope of the claims and how the non-conventional

15   and non-generic combination of claim limitations is patentably distinct from and improved upon

16   what may have been conventional or generic in the art at the time of the invention.

17       83.    As set forth in the attached exemplary non-limiting Claim Chart (Exhibit I),

18   Defendant, without authorization or license from InfoExpress, has been and is presently directly

19   infringing, literally or under the doctrine of equivalents, at least one claim of the '450 Patent,

20   pursuant to 35 U.S.C. § 271(a), including through making, using, selling, offering to sell, and

21   importing, in the United States the Accused Instrumentalities.

22       84.    Defendant actively induces infringement under § 271(b) of at least one claim of

23   the '450 Patent by selling to its customers the Accused Instrumentalities with instructions as to

24   how to use the Accused Instrumentalities as recited in the '450 Patent.  Defendant knowingly

aids, instructs, or otherwise acts with the specific intent to cause an end user to use the Accused Instrumentalities.  As set forth above, Defendant provides to third parties (including its customers) (1) brochures and literature; (2) webinars, training videos and demonstrations for FortiNAC; (3) webinars, training videos and demonstrations for FortiOS; (4) software updates; (5) product support through its FortiCare Technical Support and Services; and (6) an online community for NAC support, all of which instruct those third parties to infringe the '450 patent. Additionally, Defendant knew of the '450 Patent and knew that its use and sale of the Accused Instrumentalities infringe at least one claim of the '450 Patent, and Defendant is thus liable for inducement of the '450 Patent pursuant to 35 U.S.C. § 271(b).

85.     Defendant is liable for contributory infringement under § 271(c) of at least one claim of the '450 Patent by providing, and by having knowingly provided the Accused Instrumentalities, including the FortiNAC Servers and the FortiNAC software and devices used to infringe at least one claim of the '450 Patent.  Defendant's FortiNAC software, as sold, contains instructions for performing the claimed methods of the '450 patent.  Similarly, FortiNAC Servers are material parts of InfoExpress's claimed inventions, and are configured to practice InfoExpress's claimed methods of NAC.  Additionally, Defendant's software and devices scan a network device connected to an access point to collect information regarding that device, apply a security policy that relates to such information, and configure the access point in response to a result of applying the security policy.  Defendant's *FortiNAC 9.4.0 Administration Guide* describes "scanning" on page 487, where it explains that the "Scans view allows you to configure network scans or sets of rules that are used to scan hosts for compliance" and further that these scans "typically consist of lists of permitted operating systems and required antivirus software." *Id.*; *see also id.* at 489 (describing a "Scan on Connect" option).  This Admin Guide goes on to explain how FortiNAC "applies a security policy" on pages 426-27, where it explains

that a "network access policy consists of one user/host profile and one network access configuration." Further, "the network access configuration assigns the treatment those users and hosts receive when they connect to the network." *Id.*; *see also id.* at 432 ("[E]ndpoint compliance policies . . . establish the parameters for security that will be enforced when hosts connect to the network."). Finally, as set forth above, FortiNAC "configures" the access points in response to a result of applying the security policy. *See id.* at 400, 427 *and* 315.

86.    Defendant has known or should have known that its FortiNAC Servers and FortiNAC software and devices are especially made or especially adapted for use in infringement of the Patents-in-Suit, not staple articles, and not commodities of commerce suitable for substantially noninfringing use.

87.    To the extent 35 U.S.C. § 287 is determined to be applicable, its requirements have been satisfied with respect to the '450 Patent.

88.    InfoExpress has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to InfoExpress in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty and in an amount yet to be determined. InfoExpress is also entitled to receive such other and further relief, as this Court deems just and proper.

89.    InfoExpress alleges that Defendant's infringement of the '450 Patent has been and continues to be deliberate and willful and egregious, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to InfoExpress pursuant to 35 U.S.C. §§ 284-285. As set forth above, Defendant has had knowledge of the '450 Patent or at least was willfully blind to its infringement, as well as related patents and patent applications, and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for

InfoExpress's patent rights.  Thus, Defendant's infringing actions have been and continue to be consciously wrongful.

90.     Defendant's use of the '450 Patent is not licensed or authorized by InfoExpress in any way.

### COUNT IV:  INFRINGEMENT OF THE '444 PATENT

91.     InfoExpress incorporates all previous paragraphs by reference as if fully stated herein.

92.     InfoExpress owns all substantial rights, interest, and title in and to the '444 Patent, including the sole and exclusive right to prosecute this action and enforce the '444 Patent against infringers, and to collect damages for all relevant times.

93.     The '444 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been conventional or generic in the art at the time of the invention.

94.     As set forth in the attached exemplary non-limiting Claim Chart (Exhibit J), Defendant, without authorization or license from InfoExpress, has been and is presently directly infringing, literally or under the doctrine of equivalents, at least one claim of the '444 Patent, pursuant to 35 U.S.C. § 271(a), including through making, using, selling, offering to sell, and importing, in the United States the Accused Instrumentalities.

95.     Defendant actively induces infringement under § 271(b) of at least one claim of the '444 Patent by selling to its customers the Accused Instrumentalities with instructions as to how to use the Accused Instrumentalities such as recited in the '444 Patent.  Defendant knowingly aids, instructs, or otherwise acts with the specific intent to cause an end user to use the Accused Instrumentalities.  As set forth above, Defendant provides to third parties (including

1   its customers) (1) brochures and literature; (2) webinars, training videos and demonstrations for

2   FortiNAC; (3) webinars, training videos and demonstrations for FortiOS; (4) software updates;

3   (5) product support through its FortiCare Technical Support and Services; and (6) an online

4   community for NAC support, all of which instruct those third parties to infringe the '444 patent.

5   Additionally, Defendant knew of the '444 Patent and knew that its use and sale of the Accused

6   Instrumentalities infringe at least one claim of the '444 Patent, and Defendant is thus liable for

7   inducement of the '444 Patent pursuant to 35 U.S.C. § 271(b).

8        96.    Defendant is liable for contributory infringement under § 271(c) of at least one

9   claim of the '444 Patent by providing, and by having knowingly provided the Accused

10  Instrumentalities, including the FortiNAC Servers and the FortiNAC software and devices used

11  to infringe at least one claim of the '444 Patent.  Defendant's FortiNAC software, as sold,

12  contains instructions for performing the claimed methods of the '444 patent.  Similarly,

13  FortiNAC Servers are material parts of InfoExpress's claimed inventions, and are configured to

14  practice InfoExpress's claimed methods of NAC.  Additionally, Defendant's software and

15  devices authenticate using an EAP protocol (*see* FortiNAC Admin Guide at 348, explaining that

16  for Proxy RADIUS Authentication, FortiNAC "proxies 802.1X EAP authentication to a

17  customer-owned (external) RADIUS server, and for Local authentication, "FortiNAC's local

18  RADIUS Server processes RADIUS MAC and 802.1x EAP authentication without the need to

19  proxy to an external RADIUS server"), send a request for audit data to an agent running on a

20  device (*see* FortiNAC Admin Guide at 436 ("Agent Overview") and 437 (summarizing

21  dissolvable agents, passive agents, persistent agents, and mobile agents), and 437-476

22  (describing agents in more detail); 502-05 (describing scans, including custom scans, which

23  "search the host computer for things such as antivirus software or a particular version of an

24  operating system"), receive audit data from that device in response to that request (*see* FortiNAC

COMPLAINT FOR PATENT INFRINGEMENT

29

Admin Guide at 385 ("When hosts connect to the network, the FortiNAC software determines the host's state."), and apply a security policy relating to the audit data and the authentication (*see* FortiNAC Admin Guide at 425 (describing network access policies) and 432 ("[E]ndpoint compliance policies . . . establish the parameters for security that will be enforced when hosts connect to the network.")..

97.     Defendant has known or should have known that its FortiNAC Servers and FortiNAC software and devices are especially made or especially adapted for use in infringement of the Patents-in-Suit, not staple articles, and not commodities of commerce suitable for substantially noninfringing use.

98.     To the extent 35 U.S.C. § 287 is determined to be applicable, its requirements have been satisfied with respect to the '444 Patent.

99.     InfoExpress has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to InfoExpress in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty and in an amount yet to be determined.  InfoExpress is also entitled to receive such other and further relief, as this Court deems just and proper.

100.     InfoExpress alleges that Defendant's infringement of the '444 Patent has been and continues to be deliberate and willful and egregious, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to InfoExpress pursuant to 35 U.S.C. §§ 284-285.  As set forth above, Defendant has had knowledge of the '444 Patent or at least was willfully blind to its infringement, as well as related patents and patent applications, and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for

COMPLAINT FOR PATENT INFRINGEMENT

1    InfoExpress's patent rights.  Thus, Defendant's infringing actions have been and continue to be

2    consciously wrongful.

3        101.    Defendant's use of the '444 Patent is not licensed or authorized by InfoExpress in

4    any way.

5                    **COUNT V:  INFRINGEMENT OF THE '350 PATENT**

6        102.    InfoExpress incorporates all previous paragraphs by reference as if fully stated

7    herein.

8        103.    InfoExpress owns all substantial rights, interest, and title in and to the '350 Patent,

9    including the sole and exclusive right to prosecute this action and enforce the '350 Patent against

10   infringers, and to collect damages for all relevant times.

11       104.    The '350 Patent describes in technical detail each of the limitations of the claims,

12   allowing a skilled artisan to understand the scope of the claims and how the non-conventional

13   and non-generic combination of claim limitations is patentably distinct from and improved upon

14   what may have been conventional or generic in the art at the time of the invention.

15       105.    As set forth in the attached exemplary non-limiting Claim Chart (Exhibit K),

16   Defendant, without authorization or license from InfoExpress, has been and is presently directly

17   infringing, literally or under the doctrine of equivalents, at least one claim of the '350 Patent,

18   pursuant to 35 U.S.C. § 271(a), including through making, using, selling, offering to sell, and

19   importing, in the United States the Accused Instrumentalities.

20       106.    Defendant actively induces infringement under § 271(b) of at least one claim of

21   the '350 Patent by selling to its customers the Accused Instrumentalities with instructions as to

22   how to use the Accused Instrumentalities as recited in the '350 Patent.  Defendant knowingly

23   aids, instructs, or otherwise acts with the specific intent to cause an end user to use the Accused

24   Instrumentalities.  As set forth above, Defendant provides to third parties (including its

1  customers) (1) brochures and literature; (2) webinars, training videos and demonstrations for

2  FortiNAC; (3) webinars, training videos and demonstrations for FortiOS; (4) software updates;

3  (5) product support through its FortiCare Technical Support and Services; and (6) an online

4  community for NAC support, all of which instruct those third parties to infringe the '350 patent.

5  Additionally, Defendant knew of the '350 Patent and knew that its use and sale of the Accused

6  Instrumentalities infringe at least one claim of the '350 Patent, and Defendant is thus liable for

7  inducement of the '350 Patent pursuant to 35 U.S.C. § 271(b).

8        107.    Defendant is liable for contributory infringement under § 271(c) of at least one

9  claim of the '350 Patent by providing, and by having knowingly provided the Accused

10  Instrumentalities, including the FortiNAC Servers and the FortiNAC software and devices used

11  to infringe at least one claim of the '350 Patent.  Defendant's FortiNAC software, as sold,

12  contains instructions for performing the claimed methods of the '350 patent.  Similarly,

13  FortiNAC Servers are material parts of InfoExpress's claimed inventions, and are configured to

14  practice InfoExpress's claimed methods of NAC.  Additionally, Defendant's software and

15  devices receive audit data pertaining to a device that does not have access to a less-restricted

16  subset of a network (*see* FortiNAC Admin Guide at 385 ("When hosts connect to the network,

17  the FortiNAC software determines the host's state.") and 436, 437 and 437-76 (describing client-

18  side agents in FortiNAC), audit the device in accordance with a security policy based at least in

19  part on the audit data (*see* FortiNAC Admin Guide at 432-33 (describing "endpoint compliance"

20  and how "endpoint compliance policies contain scans used to evaluate hosts . . ."), reconfigure

21  an access point to allow access to the less-restricted subset of the network in response to the

22  security policy audit (as set forth above, *see* (*see* FortiNAC Admin Guide at 400, 427 and 315),

23  receive and evaluate updated audit data, and monitor continued compliance of the device with

24  the security policy using the updated audit data (*see* FortiNAC Admin Guide at 502 ("With

COMPLAINT FOR PATENT INFRINGEMENT

41941557.6

FortiNAC you can schedule scans to run automatically); FortiOS 7.0.0 New Features Guide at

436 ("Endpoint posture changes trigger active [Zero Trust Network Access] proxy sessions to be

re-verified and terminated if the endpoint is no longer compliant with the ZTNA policy.")).

108.     Defendant has known or should have known that its FortiNAC Servers and

FortiNAC software and devices are especially made or especially adapted for use in infringement

of the Patents-in-Suit, not staple articles, and not commodities of commerce suitable for

substantially noninfringing use.

109.     To the extent 35 U.S.C. § 287 is determined to be applicable, its requirements

have been satisfied with respect to the '350 Patent.

110.     InfoExpress has been damaged as a result of the infringing conduct by Defendant

alleged above.  Thus, Defendant is liable to InfoExpress in an amount that compensates it for

such infringement, which by law cannot be less than a reasonable royalty and in an amount yet to

be determined.  InfoExpress is also entitled to receive such other and further relief, as this Court

deems just and proper.

111.     InfoExpress alleges that Defendant's infringement of the '350 Patent has been and

continues to be deliberate and willful and egregious, and, therefore, this is an exceptional case

warranting an award of enhanced damages for up to three times the actual damages awarded and

attorney's fees to InfoExpress pursuant to 35 U.S.C. §§ 284-285.  As set forth above, Defendant

has had knowledge of the '350 Patent or at least was willfully blind to its infringement, as well

as related patents and patent applications, and its infringement thereof, and yet has deliberately

continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for

InfoExpress's patent rights.  Thus, Defendant's infringing actions have been and continue to be

consciously wrongful.

112.    Defendant's use of the '350 Patent is not licensed or authorized by InfoExpress in any way.

**COUNT VI:  INFRINGEMENT OF THE '645 PATENT**

113.    InfoExpress incorporates all previous paragraphs by reference as if fully stated herein.

114.    InfoExpress owns all substantial rights, interest, and title in and to the '645 Patent, including the sole and exclusive right to prosecute this action and enforce the '645 Patent against infringers, and to collect damages for all relevant times.

115.    The '645 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been conventional or generic in the art at the time of the invention.

116.    As set forth in the attached exemplary non-limiting Claim Chart (Exhibit L), Defendant, without authorization or license from InfoExpress, has been and is presently directly infringing, literally or under the doctrine of equivalents, at least one claim of the '645 Patent, pursuant to 35 U.S.C. § 271(a), including through making, using, selling, offering to sell, and importing, in the United States the Accused Instrumentalities.

117.    Defendant actively induces infringement under § 271(b) of at least one claim of the '645 Patent by selling to its customers the Accused Instrumentalities with instructions as to how to use the Accused Instrumentalities as recited in the '645 Patent.  Defendant knowingly aids, instructs, or otherwise acts with the specific intent to cause an end user to use the Accused Instrumentalities.  As set forth above, Defendant provides to third parties (including its customers) (1) brochures and literature; (2) webinars, training videos and demonstrations for FortiNAC; (3) webinars, training videos and demonstrations for FortiOS; (4) software updates;

(5) product support through its FortiCare Technical Support and Services; and (6) an online community for NAC support, all of which instruct those third parties to infringe the '645 Patent. Additionally, Defendant knew of the '645 Patent and knew that its use and sale of the Accused Instrumentalities infringe at least one claim of the '645 Patent, and Defendant is thus liable for inducement of the '645 Patent pursuant to 35 U.S.C. § 271(b).

118.    Defendant is liable for contributory infringement under § 271(c) of at least one claim of the '645 Patent by providing, and by having knowingly provided the Accused Instrumentalities, including the FortiNAC Servers and the FortiNAC software and devices used to infringe at least one claim of the '645 Patent.  Defendant's FortiNAC software, as sold, contains instructions for performing the claimed methods of the '645 Patent.  Similarly, FortiNAC Servers are material parts of InfoExpress's claimed inventions, and are configured to practice InfoExpress's claimed methods of NAC.  Additionally, Defendant's software and devices formulate and send audit requests to user devices (i.e. endpoints) (*see* FortiNAC Admin Guide at 432-33 (describing "endpoint compliance" and how "endpoint compliance policies contain scans used to evaluate hosts . . ." and "can also use an agent on the host to ensure [] compliance")), receive information in response to those audit requests, evaluate that information (*see* FortiNAC 9.4.0 Admin Guide at 487 (explaining that "the Scans view allows you to configure network scans or sets of rules that are used to scan hosts for compliance" and further that these scans "typically consist of lists of permitted operating systems and required antivirus software"); *see also id*. at 489 (describing a "Scan on Connect" option)), receive authentication information from the device using an extensible authentication protocol (EAP) (as set forth above, *see* FortiNAC 9.4.0 Admin Guide at 348, 349), and configure an access point in response to approval of the endpoint device by a gatekeeper (as set forth above, *see* FortiNAC 9.4.0 Admin Guide at 400, 427 and 315).

COMPLAINT FOR PATENT INFRINGEMENT

41941557.6

119. Defendant has known or should have known that its FortiNAC Servers and FortiNAC software and devices are especially made or especially adapted for use in infringement of the Patents-in-Suit, not staple articles, and not commodities of commerce suitable for substantially noninfringing use.

120. To the extent 35 U.S.C. § 287 is determined to be applicable, its requirements have been satisfied with respect to the '645 Patent.

121. InfoExpress has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to InfoExpress in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty and in an amount yet to be determined.  InfoExpress is also entitled to receive such other and further relief, as this Court deems just and proper.

122. InfoExpress alleges that Defendant's infringement of the '645 Patent has been and continues to be deliberate and willful and egregious, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to InfoExpress pursuant to 35 U.S.C. §§ 284-285.  As set forth above, Defendant has had knowledge of the '645 Patent or at least was willfully blind to its infringement, as well as related patents and patent applications, and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for InfoExpress's patent rights.  Thus, Defendant's infringing actions have been and continue to be consciously wrongful.

123. Defendant's use of the '645 Patent is not licensed or authorized by InfoExpress in any way.

1  **VI.**   **DEMAND FOR JURY TRIAL**

2         Pursuant to Federal Rule of Civil Procedure 38(b), InfoExpress hereby demands a trial by

3  jury of any and all issues triable of right before a jury.

4  **VII.**   **PRAYER FOR RELIEF**

5         **WHEREFORE**, InfoExpress respectfully requests that the Court:

6         A.      Enter a judgment that Defendant has infringed one or more claims of the Patents-

7  in-Suit;

8         B.      Enter a preliminary and permanent injunction against Defendant and its officers,

9  employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them from

10  infringing the Patents-in-Suit and for all further and proper injunctive relief pursuant to 35

11  U.S.C. § 283.

12         C.      Enter a judgment awarding Plaintiff InfoExpress of such damages adequate to

13  compensate it for Defendant's infringement of the Patents-in-Suit, including lost profits but no

14  less than a reasonable royalty, as well as pre-judgment and post-judgment interest at the

15  maximum rate permitted by law;

16         D.      Order Defendant to pay damages adequate to compensate InfoExpress for

17  Defendant's infringement, together with interest and costs under 35 U.S.C. § 284;

18         E.      Order Defendant to pay supplemental damages to InfoExpress, including interest,

19  with an accounting, as needed;

20         F.      Declare this case exceptional pursuant to 35 U.S.C. § 285;

21         G.      Declare that Defendant's infringement is willful, wanton, deliberate, and

22  egregious and that the damages awarded to InfoExpress should be enhanced up to three times the

23  actual damages awarded;

24

COMPLAINT FOR PATENT INFRINGEMENT

41941557.6

H.     Award Plaintiff InfoExpress its costs, disbursements, expert witness fees, and attorneys' fees incurred in prosecution this action, with interest; and

I.     Award Plaintiff InfoExpress other such and further relief, including equitable relief, as this Court deems just and proper.

Dated: August 25, 2023           Respectfully submitted,

*/s/ Brian R. Michalek, Esq.*
Brian R. Michalek (SBN 302007) (*pro hac vice*)
brian.michalek@saul.com
Casey T. Grabenstein (*pro hac vice* forthcoming)
casey.grabenstein@saul.com
Joseph M. Kuo (*pro hac vice* forthcoming)
joseph.kuo@saul.com
**SAUL EWING LLP**
161 N. Clark St., Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7100
Facsimile: (312) 876-0288

Andrew Schwerin (*pro hac vice* forthcoming)
andrew.schwerin@saul.com
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102 2186
Telephone: (215) 972-7184
Facsimile: (215) 972-7184

Michael E. Flynn-O'Brien (SBN 291301)
Elizabeth Day (SBN 177125)
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7245
Facsimile: (415) 426-4744
mflynnobrien@bdiplaw.com

*Attorneys for Plaintiff InfoExpress Inc.*

COMPLAINT FOR PATENT INFRINGEMENT

41941557.6